This morning is 17-1114 A. P. v. Lewis Palmer. Ms. Peasley? Good morning. May it please the court, my name is Samantha Peasley and I represent the plaintiff appellant in this case, A. P. v. Lewis Palmer. I would like to reserve one minute of my time for rebuttal, please. This case is about a boy being mercilessly bullied as a result of his disability, about his asking for help from the school, and about him being ignored or punished as a result of the bullying, or his Section 504 and individualized educational plans, as well as his subsequent expulsion. The District Court of Colorado dismissed this case for appellant's failure to exhaust administrative remedies under the Individuals with Disabilities Education Act. We ask that this court reverse the District Court decision for three reasons. First, because appellant's claims based on bullying did not require exhaustion because under the new Supreme Court case, Fry v. Napoleon Community Schools, they are not under the IDEA. Second, because administrative exhaustion was accepted or waived in this case. And third, because appellant did in fact exhaust his administrative remedies. I'd like to start by discussing the Fry case and its application to this case. Before we get to that, did you forfeit the argument by not raising it below? Regarding the Fry case? Yeah. I know it came late, but I don't think you made the exhaustion argument below quite that. No, Your Honor. And that's because on the previous law under the IDEA, the bullying claims did fall under the exhaustion requirement. However, with the new law from the Supreme Court of Colorado, that has been narrowed. To give a little bit of background on that, to understand where that is, the IDEA is a mandatory administrative framework when a plaintiff seeks relief under a statute when relief is also available under the IDEA. Relief available under the IDEA is for the denial of a free and Previously, anything that was educational in nature was considered to be part of a fate. So many activities that took place at school or involved a teacher and student interactions were considered to be under the IDEA. However, Fry has stated that this is too broad and has narrowed the scope of what is a denial of a fate. With the narrowing of that scope, all of plaintiff's claims that related to bullying fell outside of the IDEA. So while they were part of the denial of a fate at the time the complaint was written and at the time that the motion to dismiss was briefed, they are not part of a denial of a fate now. Now, this Court can consider those claims because in the Tenth Circuit, the Court of Appeals is permitted, or the Court of Appeals, the Tenth Circuit Court of Appeals is permitted to consider the law at the time of your decision, not at the time of the District Court of Colorado's decision when a change in the law has been made. This was stated in Davidson v. American Online, which was a 2003 case. Should we reach the merits or is this, if we agree with you, should we send it back to the District Court to consider your Fry arguments in the first instance? Yes, that would be one option in this case is you could send them back to the District Court with the instructions to reconsider the bullying claims under Fry. However, the other claims should also be considered under the exception or waiver argument today or in the alternative that exhaustion has already happened. So the bullying claims could... I'm a little confused about your argument. At what point was Fry decided? Fry was decided six business days before the District Court of Colorado issued its order. Did you ask, assuming that Fry somehow changed the law on exhaustion, did you, rather than just explaining, you know, and providing clues as it did, assuming that, did you ask the District Court to reconsider? It did not come to the attention of the appellants until after the order to dismiss was issued. However, it also did not come to the attention of the District Court or to the appellee in this case. You could have asked the court to reconsider its decision in light of Fry, couldn't you? Could have. However, in this case, because the other arguments were also being appealed, motion to appeal seemed more appropriate. Given Fry, we should divide appellants' claims into the bullying and the IDEA claims in this case. Now, bullying does not... Did you make this, I'm sorry, did you make this argument about Fry in your appellate briefing? Yes, ma'am. In your reply or... The appellant argument, in the main portion of the appellant argument, there are actually two issues that relate to Fry, issue A and issue E. Why now? I'm talking about the exhaustion, that somehow it created new law that justifies your waiver of the, or forfeiture of the exhaustion argument. Oh, we did not cite the case that I have just cited now. However, we did make the claim that because this is a de novo review of this case, that this court has the right to consider Fry in considering this claim. Thank you. In considering Fry, what we look at is the crux or the grovelment of the complaint, rather than whether it is merely educational in nature. And here, the crux or the grovelment of AP's claims are, in fact, the bullying. Bullying is mentioned 68 times in the amended complaint, and it's mentioned 16 times by the District Court of Colorado in its order to dismiss. Moreover, the District Court of Colorado recognized several disability discrimination claims within the appellant's complaint. The consequence of the bullying was the inability of AP to have an adequate educational environment, right? That's not entirely correct. The consequence of the bullying was that AP suffered greatly at school, physically and mentally, was that he was terrified outside of the school, and that he felt there was nowhere to turn to within the school. While there were other educational consequences... Right, that it wasn't an adequate educational environment for a child with a disability. It also would not be an adequate educational environment for a child without a disability. And that's where the distinction lies here. FRIE actually gives us two hypotheticals to look at to determine whether this falls under inappropriate public education or could be applied to any child in the school. First, the plaintiff... I thought the problem was that he was particularly susceptible to, you know, taunting and really the failure of the school officials to correct it because of his disability. Yes. So other children in the school or another class. Correct. And that's what makes it a disability discrimination claim, not denial of faith claim. So when you have a disability discrimination claim, it could happen in any other public educational setting or it could happen to an adult at the school. Those are the two hypotheticals that FRI asked us to discuss. If those two conditions are met, then we're looking at a disability discrimination claim that does not require exhaustion under the IDEA. Whereas if the answer to those is no, then we're looking at something that deals with a free and appropriate public education. In this case, AP could have been bullied at a library with his disability by other individuals who knew about it, causing him to react in a library or causing other individuals to accuse him of reacting in a library and getting banned for life. This would be a disability discrimination claim under the ADA. Similarly, a teacher at the school with the same or similar disability could be mocked by the other teachers and pushed to react or accused of reacting and could be fired. And this would be a disability discrimination claim. So FRI has narrowed what we consider as a faith versus disability discrimination. Well, let me ask you a question about those two scenarios. If there had been bullying at the library or a theater or somewhere outside of a school, it's true you could have bullying, but would there be any cause of action for a librarian's failure to protect a disabled person against a bully? Or a theater owner? There wouldn't be any cause of action or liability, would there? There would be if AP, as in this case, were then accused of actions that would have him being banned from that area and the librarian or the theater owner did not make a proper investigation and due to his disability, banned AP for life from that library. That would be a refusal of a public service accommodation. That's a different kind of claim. The FRI claim talks about it has to be essentially the same claim. This would be... You're talking about a denial of public service, not an employment-type discrimination claim. You're talking about something else. And to me, that's even closer to a faith claim. I don't get it. Once again, I say that a lot. Part of the reason that they seem very closely is because up until this point, ADA claims, Section 504 of the Rehabilitation Act claims, and IDA claims have all been lumped together. What I described as the library claim would be a viable Americans with Disabilities Act claim. Somebody was banned from a public service. A denial of public service. Yes, as a result of their disability. But I thought you were suggesting it was more of a... trying to compare it more to an employment discrimination-type claim. That would be a similar denial under... based upon a disability that would be akin to this claim because the bullying claims come under the ADA in Section 504 of the Rehabilitation Act in this case. In addition, the exhaustion in this case would have been futile or... What about the second FRI test? You don't address it in your brief. FRI clue, I guess they called it. The hypotheticals or the relief? There was a second clue. And I didn't put it in my notes here, but there were two clues that they gave. And then I think you cited the two clues, but then you didn't apply the second one, as I recall. The second clue is the history of the proceedings, which goes into my second point there, and which we had addressed below. And the history of the proceedings is, if you treat it like an IDA claim, if you treat it like a denial of faith, it will also be treated like a denial of faith. Now, in this one, this is a little bit difficult because the claims were originally under the IDA and the new law has separated them out, so they were treated together.  there are separate times within the complaint where AP and his parents requested help for bullying, and when they requested help based on his disability, his 504 plan, his IEP. There are 13 incidents alleged in the complaint where they requested help for his bullying and where it was ignored. And because they specifically requested the help for that bullying and it was denied, you can look at that procedural history as well as the expulsion hearing to show that they treated this as two separate things. What about Fry's discussion about whether or not an adult versus a student could have asserted the same claim? Could an adult have asserted, for example, in your hypothetical, an adult that was being bullied by someone else and they were banished from the library, would there be any difference in the liability of the governmental entity that owns the library in connection with your earlier answer versus a student? An adult would have exactly the same claim, right? Exactly, an adult would have exactly the same claim. And that's one indicia under Fry that this is not an IDA claim. Correct, and therefore does not require... I thought that the second clue was whether an adult at the school, not at some other facility such as under the first test or the Q part of it. The second part of that first clue is could an adult at the school, say an employee or a visitor, have pressed essentially the same grievance? How would an employee or visitor at the school have pressed the same grievance that you're pressing an adult visitor who was bullied by someone? If an adult visitor at the school would be a little bit more difficult than an employee, but let's say that they have the same claim, same knowledge here, and I do see that I'm about to run into my rebuttal time, may I briefly answer your question so we'll preserve that time? Thank you. An adult visitor at the school with impulse control disorder that other attendees of the school, other teachers, faculty, parents, students, knew had this and continued to bully this visitor to the school on a regular basis. Let's say it's a volunteer who comes in once a week and continued to complain to the administration based upon their bullying of that visitor and the visitor continued to complain to the administration and say, I'm being harassed at your school. I'm being bullied based upon my disability. So the school had notice of this and then ultimately, some of the bullies complained to the administration about the visitor and the visitor was banned from the school premises. The school at that point knows about the disability, knows of the bullying because of the disability and ultimately bans the visitor from the school for the disability. Because these are the same thing under FRI, exhaustion is not required and therefore we request that this court reverse the judgment of the district court. Thank you, counsel. Thank you. Good morning. May it please the court, my name is Mary Gray. I represent Defendant Lewis Palmer School District and the individually named defendants in this lawsuit. This case stems from the suspension, discipline and expulsion of a student who engaged in conduct including making threats to other students and to shoot up the school. This case comes to us by way of the amended complaint asserting claims under the Individuals with Disabilities in Education Act Section 504 in the ADA. The district court properly held that based on the claims that plaintiffs asserted in their amended complaint, exhaustion was required for these types of claims. We are asking that this court uphold the district court's dismissal of the Porco's claims. FRI does change the legal landscape, doesn't it? I believe that FRI does narrow the test for determining whether or not certain claims need to be exhausted but I do not believe that FRI changes the outcome of this case. Indeed, if you look at the FRI test that we were talking about earlier, I agree, I would say that in this situation whether or not a faith denial has occurred is, A, outlined clearly in the amended complaint. Plaintiffs use the term free appropriate public education or faith six times in their amended complaint. Right, but FRI says don't look at the labels, look at what the claim is and if AP's claim is that the school failed to prevent bullying and then wrongfully expelled him, wouldn't that be a more generic disability claim? FRI, the holding in FRI is that, first of all, if it's unclear from the complaint whether or not a faith denial is alleged then you look to whether or not the tests in FRI are met. I would say that it's not unclear from this complaint. I realize that you can't look simply just to the terms but it's not like they drop the term faith in the amended complaint kind of lackadaisically without knowing what it meant. I mean, the title of their counts 1 and 2 claims are denial of a free appropriate public education in violation of 504, the ADA and the IDEA. I think that that gives a clue that they intended for this claim to be one for a denial of a faith. Also, if we look to the actual allegations about the injuries that are alleged in this case they are educational in nature. And educational injuries under FRI are defined by FRI as a denial of the free appropriate public education. What the amended complaint asserts is that the school district's conduct in dealing with the alleged bullying denied Mr. Porco his free appropriate public education. His grades deteriorated. That's educational, free appropriate public education. The amended complaint talks specifically about educational deficiencies that he did not receive. That he's being removed from the classroom because of these suspensions and ultimately the expulsion and therefore is not receiving an appropriate education. And so I think that... But it also alleged, did it not, that the conduct caused depression and PTSD. That's correct, but there's no allegation that they ever notified the school district that that was the case. Had they notified the school district that that was the case the school district would have had an obligation to consider those as potential new disabilities look at whether or not he needed to be on a new individualized education program in IEP or determine whether or not his 504 needed to be adjusted which are all things that fall within the purview of the IDEA and would require exhaustion. So there may be a notice issue but wouldn't that cut against your argument that at least some of the claims in the complaint do not relate to free appropriate public education? Your Honor, I think that arguably some of the injuries that they are alleging maybe one of the injuries they are alleging is not a denial of faith. But this circuit has held that if the majority of the injuries and this is in the Carroll cases if the majority of the injuries alleged are educational in nature and are a denial of a free appropriate public education then the claims are so intertwined that exhaustion is required and I believe also this court held that in the Hayes case which preceded Carroll. But didn't the Third Circuit and Butler say that we go claim by claim? I think that in this case the claims if you look at the actual claims asserted the claims assert the denial of a free appropriate public education. There's one sentence I believe in the amended complaint that talks about this PTSD issue but the majority of the injuries alleged and the actual claims address the denial of a free of a faith. Well some of the claims let me test that a little bit I don't want to monopolize the time but some of the claims in the complaint relate to retaliation and retaliation doesn't strike me as being the denial of a free appropriate public education. So at least some even though counts 1 and 2 the heading is the denial of a faith if you really go into the underlying allegations at least some of the wrongdoing as well as the damages don't relate to a faith. What you looked at under Fry and some of the other cases that this court has found is you look at the injuries that are alleged as opposed to the relief that the plaintiff is seeking so you need to look at the injuries alleged and here I submit that the majority of the injuries alleged are educational in nature. One of the things I want to point out that I think is key to this case is that I don't even believe we don't even need to be talking at this point about exhaustion because the plaintiffs conceded below that they needed to exhaust their administrative remedies and that they and in fact they say we did that by filing with OCR which does not satisfy the requirements under the IDEA and I would disagree that Fry changed that because I still believe as I said that Fry looks at what Fry looks at is whether or not the injuries are denial of a faith and in this case they are. In addition not only did the plaintiffs concede below that they needed to exhaust their administrative remedies they never raised an argument that exhaustion would be futile and I realize that Ms. Peasley was going to discuss that a little bit but it is found in her opening brief and then also in the reply brief. They never discussed futility at all below that was never raised. There are a number of facts that were raised for the first time on appeal that were never discussed either in the response to the district's motion to dismiss or discussed in the amended complaint. All of those facts and the new arguments raised should be disregarded and many of them I think the plaintiffs are using to support their case today and those new facts and arguments would need to be disregarded. And one of the things I'd like to address in terms of the reply is the reply suggests that the school district did not identify which new facts were alleged and I would submit that that is incorrect. The new facts alleged by the plaintiffs that were not discussed were the new facts alleged were that they requested that the student be placed back on an IEP. They never alleged that the student be placed back on an IEP in the amended complaint. There was never an allegation that their verbal requests to put the student back on the IEP were refused by the school district. There was never an allegation that the school district failed to provide them with notice of procedural rights under the IDEA and there was never an allegation that there were structural or systemic failures of the school district that would make exhaustion in this circumstance futile. Where did AP claim a FAPE again? So the FAPE denials in the amended complaint can be found in the description of the count one claim, the description of the count two claim, the specific denials of FAPE I should say using the term FAPE. They're found at paragraphs 70, 101, 106 and 116 of the amended complaint. In addition, when you look at the actual allegations in terms of what they are alleging as educational injuries, they state, the plaintiff states that LT was on a 504 and an IEP for ADHD and impulse control order. That's found in paragraphs 9 and 13 of the amended complaint that he was removed from his IEP. Paragraph 10, he was, that he threatened to shoot up the school and was therefore disciplined for that. That's paragraphs 22 and paragraph 23. They do state that he was placed on a behavior contract after that incident rather than being placed back on an IEP but there's no allegation that anyone ever requested that he be put back on an IEP or reevaluated for any new disabilities that might be in place. He sought therapeutic help to develop strategies to deal with abilities. That was paragraph 24 of the amended complaint. He could have Did he ask for a faith vote to the school district before the complaint was filed? I'm sorry, could you repeat your question? Was there a faith request? I'm sorry, I don't believe I understand. A request for accommodation. For an IEP? Yes. No. There was no request that they have a new IEP that he be tested for new IEP services or be placed on an IEP. There's some information in the record related to exhaustion that after this case was dismissed in the administrative remedies, but that's not before this court that wasn't alleged in the amended complaint. Doesn't that seem to suggest that it really wasn't an educational related cause of action given that procedural history before the lawsuit was filed? That they didn't request that he be put back on an IEP? Well, I mean, I disagree with that because the injuries they are alleging are educational in nature. They are saying that the school district's conduct in dealing with the bullying and dealing with LT effectively denied him educational services. And that is what their complaint about. And that's what this case is about. And a denial of educational   denial of educational services. So, the two FRI hypotheticals that we were discussing with your colleague, don't you think those could be met by an adult in a school or by an individual in another public entity? In terms of the bullying, no, I disagree with that. I don't believe that there is a private cause of action that someone in those situations could bring for bullying in those situations. I think the FRI test really is looking at a claim. And really what FRI says is it's all about if there is a fake denial, then you would apply, would be if an adult at the school could bring the same claim. A situation where an adult at the school could bring the same claim would be like wheelchair access. Let's say an adult is trying to get into the school and is using a wheelchair and there is a volunteer bullying. So not if the volunteer was not an employee of the school district, I don't believe that it would not. Let's assume it's the janitor or a paid resource teacher. That would be a claim for workplace harassment which would require exhaustion under the EEOC or the CCRD. So you would have to exhaust administrative remedies for that particular claim. She seemed to be making it a denial. The way she analogized on that first clue to the library was to say that her claim is not about bullying essentially, it's about being thrown out of the school. And so if someone were bullied and they reacted and they got thrown out of the library, they'd be denied a public service essentially. But what you're saying is this isn't about a denial of public service because that would be excluded from the exhaustion requirements anyway. This is about the inability of a library or being thrown out of another public place to analogize it to being thrown out of the school for reacting to the bullying. And if it's a student in the school who's thrown out, then they're not receiving the educational services, and if it's a disabled student, they're not receiving the   So that's the generality that we're framing the claim here, isn't it? I mean, you're keeping it narrow to the classroom, your colleagues keeping it broader to more of an access type claim. Isn't that really kind of what the dispute over the application 5 boils down to? I'd submit that she is trying to make it an access claim at this point, but I don't believe that was ever raised below. I don't think it's pled in the amended complaint, and I don't think that this court should take that into account when determining whether or not, or when determining whether or not the district court properly dismissed. Thank you, counsel. Could you give her 30 seconds, Ellen? Thank you, your honor. Educational in nature  longer the legal standard for whether something is a denial of a fate. For I specifically believe that the district court is not able to overturn educational in nature stating in the case that it reviews that the injuries alleged below were educational in nature which was overly broad and that that was not the same as asking the crux of the complaint. Moreover, the lower court identified multiple disability discrimination claims as well as the fate claims and those should be treated separately here. Thank you. Thank you, counsel. Appreciate the   understand your positions. Your counsel is excused. The case shall be submitted. The court will take a five-minute recess. We will    five minutes. Thank you.